```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/16/2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                    :

GABRIEL GUERRERO,
                                 Plaintiff,

                          -v -

SOFT DRINK AND BREWERY WORKERS
UNION, LOCAL 812, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,
COCA-COLA REFRESHMENTS USA, INC.,
JOSE RAMIREZ and CARLOS DOE,

                                 Defendants.
-----------------------------------------------------------------X

1:15-cv-911-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, District Judge:

## I. INTRODUCTION

      Plaintiff, Mr. Gabriel Guerrero, worked as a driver for a Coca-Cola distributor in the Bronx. Under pressure, Plaintiff confessed to his employer that he had once deviated from his delivery route, and that he had traded one can of soda intended for delivery for free food. Plaintiff alleges that his confession was false. Nonetheless, as a result of his confession, Plaintiff was terminated. Plaintiff asserts that his union breached its duty of fair representation to him by failing to investigate the cause of his termination, and by making tactical errors during his arbitration hearing. Because the complaint fails to plausibly allege that Plaintiff's union acted arbitrarily or in bad faith, however, Plaintiff's claims against his union for breach of its duty of fair representation are dismissed. For the reasons outlined below, Plaintiff's other allegations against the defendants are also dismissed in their entirety.

## II. BACKGROUND[1]

Plaintiff worked as a driver for Coca-Cola Refreshments USA, Inc. ("CCR"), making deliveries from a distribution center in the Bronx. First Amended Complaint, Dkt. No. 47 ("Compl.") ¶¶ 5, 12. On July 2, 2014, after returning from his route, one of Plaintiff's supervisors directed him to a conference room, where he was left alone for thirty minutes. *Id.* ¶ 14. Plaintiff was then directed to another room, where Mr. Carlos Doe, the company's regional security officer, sat alone. *Id.* ¶ 15. Plaintiff suspected that Mr. Doe was investigating the theft of products by drivers. *Id.* ¶ 16. Moreover, he feared that one of his fellow drivers, Mr. Felix Ruiz, who was hostile to Plaintiff, had prompted the company to investigate Plaintiff "in order to mitigate his own penalties" in connection with an ongoing investigation of theft by Mr. Ruiz. *Id.* ¶¶ 16-17.

Plaintiff and Mr. Doe sat together in silence for thirty minutes until they were joined by Mr. Jose Ramirez, the distribution manager for all employees at the Bronx distribution facility, and two of Plaintiff's intermediate supervisors. *Id.* ¶¶ 6, 11, 17. Mr. Brian Harrison, a representative of Plaintiff's union—Soft Drink and Brewery Workers Union, Local 812 ("Local 812")—also joined the meeting. *Id.* ¶ 17. Plaintiff asked why Mr. Harrison was representing him at the meeting, rather than one of his shop stewards, and was told that they were not available. *Id.* ¶¶ 9, 18. Plaintiff was specifically told that one of the stewards, Mr. Mario Alvarado, had already left for the day. *Id.* ¶¶ 9, 18.

As Plaintiff had anticipated, Mr. Doe and one of Plaintiff's supervisors began to question him about whether he had stolen from the company. *Id.* ¶ 19. Throughout the questioning, they pointed to a thick, closed file on a table, indicating that they had proof that Plaintiff had exchanged

---

[1] Unless otherwise noted, the facts are taken from the amended complaint, and are accepted as true for the purposes of this Rule 12(b)(6) motion. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

products for cash. *Id.* ¶ 19. At first, Plaintiff denied the accusations, but then, after persistent questioning from his accusers, Plaintiff admitted that he had traded one can of soda for food, and that he had once deviated from his delivery route to get a haircut. *Id.* ¶¶ 20-21. But Plaintiff's confession was false; Plaintiff admitted to the violations because he believed that the statements would end the investigation, and that he would ultimately be vindicated. *Id.* ¶ 22.

Plaintiff and his union representative, Mr. Harrison, then left the conference room. *Id.* ¶ 23. Outside the room, Plaintiff explained to the union representative that his confession was false, and explained what had motivated him to lie to his questioners. *Id.* Mr. Harrison then "opened the conference room door slightly and asked 'are you guys going to fire him?['] Carlos Doe responded that [Plaintiff] could go back to work, 'but if I hear your name again we will have a big problem.'" *Id.* ¶ 23.

Three weeks later, Mr. Ramirez handed Plaintiff a resignation letter. Plaintiff consulted with his Local 812 delegate, who advised him that the resignation offer was "a good deal," and that Plaintiff should accept it. *Id.* ¶ 26. Plaintiff refused to sign the resignation letter, and was, instead, terminated later that day. Plaintiff received a letter in connection with his termination, stating that, after a thorough investigation, the company had concluded that Plaintiff had "misappropriated product for personal gain and falsified documentation to hide [his] theft." *Id.* ¶ 28. Plaintiff filed a grievance with his union the following day. *Id.* ¶ 27.

Plaintiff's shop steward, Mr. Alcantara, later contacted him to ask about the circumstances of Plaintiff's termination. *Id.* ¶ 29. Plaintiff explained what had happened during his interrogation, and was surprised to learn that, contrary to what he was told on the day of his interview, Mr. Alcantara had been on site that day, available to represent him. *Id.* ¶ 30. Mr. Alcantara told Plaintiff that Mr. Ramirez, the CCR manager, had specifically told Mr. Alcantara that Plaintiff would not be interrogated that day. *Id.*

An arbitration hearing regarding Plaintiff's termination was scheduled pursuant to Local 812's collective bargaining agreement with CCR. In mid-August 2014, Plaintiff met with his Local 812 attorney to discuss his case. During the 45-minute meeting with his attorney, Plaintiff "suspected that the attorney was not properly considering his defenses or the underlying facts, and simply not listening at other times." *Id.* ¶ 31.

The arbitration hearing regarding Plaintiff's termination was held on October 2, 2014. *Id.* ¶ 32. Local 812 represented Plaintiff's interests at the arbitration. *Id.* ¶¶ 31-32, 34. Plaintiff himself testified at the arbitration hearing, as did Mr. Doe and Mr. Alvarado. *Id.* ¶ 31. A single character witness testified on Plaintiff's behalf, although Plaintiff requested that more character witnesses be heard. *Id.* ¶ 33. No documentary or photographic evidence was presented at the hearing. *Id.* During the hearing, CCR argued that Plaintiff's admitted misconduct—his exchange of product for free lunch, and going off route for a haircut—constituted sufficient cause for his termination. *Id.* Defending Plaintiff's interests, "Local 812 explained that [Plaintiff] was harassed, scared and felt trapped during the Investigatory Interview and therefore uttered two easily disprovable false admissions of guilt to Carlos Doe . . . ." *Id.* ¶ 34.

On October 16, 2014, two weeks after the arbitration hearing, the arbitrator issued a written opinion and award. *Id.* The arbitrator concluded that Plaintiff had been terminated for good cause, "'[b]ased upon the substantial evidence of the case as a whole[.]'" *Id.*

### III. PROCEDURAL HISTORY

Plaintiff commenced this case on January 7, 2015 with a filing in New York Supreme Court, Bronx County. Defendants removed the case to this Court on February 6, 2015. Plaintiff's counsel first considered requesting a remand of the action to state court, Dkt. No. 15, then, following a conference with defense counsel and the Court, attempted to dismiss the action pursuant to Federal

4

Rule of Civil Procedure 41(a)(1)(A)(i).  Dismissal under that rule was not available at that time given that two of the defendants had already filed answers.  Dkt. No. 21.

Plaintiff filed his first complaint in this case on March 9, 2015.  Dkt. No. 29.  The defendants moved to dismiss that complaint on March 27, 2015, on a number of grounds, including arguments that the complaint failed to state a claim.  Plaintiff responded to the motions to dismiss on April 24, 2015, by filing the first amended complaint.  Dkt. No. 44.

The first amended complaint asserts a number of claims against the defendants.  The first cause of action asserts that Local 812 breached its duty of fair representation in connection with its representation of him in the arbitration proceeding.  Compl. ¶¶ 35-40.  The second cause of action asserts that CCR engaged in unfair labor practices, in violation of 29 U.S.C. § 158(a)(1), (2).  *Id.* ¶¶ 41-44.  The third cause of action asserts that CCR violated 42 U.S.C. § 1981, by denying Plaintiff "equal protection of laws as similarly situated employees."  *Id.* ¶¶ 45-49.  The fourth and fifth causes of action assert that Local 812 violated state and city discrimination laws by violating 42 U.S.C. § 1981.  *Id.* ¶¶ 50-55.  The sixth and final cause of action asserts that Mr. Ramirez, CCR, and Local 812 conspired to deprive Plaintiff of equal protection of the law, in violation of 42 U.S.C. § 1985(3).  *Id.* ¶¶ 56-58.  The defendants now move to dismiss all of these claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

IV. **ANALYSIS**

**A. Legal Standard**

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)).  To avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A formulaic recitation of the elements of a cause of action, devoid of supporting facts, does not suffice.  *Id.*  To satisfy the "plausibility" requirement, the plaintiff must plead facts that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The standard for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is "substantively identical" to that governing Rule 12(b)(6).  *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).  However, the plaintiff bears the burden of establishing jurisdiction in a Rule 12(b)(1) motion, and the plaintiff must meet that burden by a preponderance of the evidence. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). "'[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).

### B. Duty of Fair Representation

Plaintiff's first cause of action against Local 812 asserts that the union breached its duty of fair representation to him.[2]  "'[A] union breaches the duty of fair representation when its conduct

---

[2] Plaintiff has not expressly asserted a claim under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, but suggests in his opposition that the claim can be framed as a hybrid § 301/duty of fair representation claim.  In that, he is correct.  "Although formally comprised of two separate causes of action, a suit in which an employee alleges that an employer has breached a CBA and that a union has breached its duty of fair representation by failing to enforce the CBA is known as a 'hybrid § 301/fair representation claim.'" *Acosta v. Potter*, 410 F. Supp. 2d 298, 308 (S.D.N.Y. 2006) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983); *Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33-34 (2d Cir. 2000)).  "The law is clear that regardless of who is named as a defendant, a hybrid claim is presented if an employee has a cause of action against employer and the union, where the two claims are inextricably linked, and where the case to be proved is the same against both." *McKee v. Transco Prods., Inc.*, 874 F.2d 83, 86 (2d Cir. 1989).  "To establish a hybrid § 301/DFR claim, a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members.  The plaintiff may sue the union or the employer, or both, but must allege violations on the part of both." *White v. White Rose Food*, 237 F.3d 174, 178-79 (2d Cir. 2001).  However, "[b]ecause a union's breach of the duty of fair representation 'is a prerequisite to consideration of the merits of plaintiff's claim against' an employer for breach of a CBA, courts presented with hybrid claims need not reach the question of whether the employer violated the CBA unless the union has acted arbitrarily, in bad faith, or discriminatorily." *Acosta*, 410 F. Supp. 2d at 309 (quoting *Young v. U.S. Postal Serv.*, 907 F.2d 305, 307 (2d Cir. 1990)).  As a result, because the Court concludes that Plaintiff has not adequately pleaded a breach of

toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith.'" *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001) (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998)).  The bar for finding that a union has breached this duty is high.  "Judicial review of union action . . . must be highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities." *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (internal quotation marks omitted).

"'[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational.'" *White*, 237 F.3d at 180–81 (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65 (1991)).  "'This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong.'" *Id.* at 179.  "A union acts in bad faith when it acts with an improper intent, purpose, or motive." *Spellacy*, 156 F.3d at 126.  Moreover, "[a] showing of '[b]ad faith requires a showing of fraudulent, deceitful, or dishonest action.'" *Id.* (quoting *Sim v. N.Y. Mailers' Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999)).

It is well established that, in the context of a union's representation of an employee in an arbitration proceeding, "[t]actical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach." *Barr v. United Parcel Serv., Inc.*, 868 F. 2d 36, 43 (2d Cir. 1994).  "[P]roof of mere negligence or errors of judgment . . . is insufficient. . . . . 'As long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage.'" *Id.* at 43-44 (quoting *Cook v. Pan American World Airways, Inc.*, 771 F.2d 635, 645 (2d Cir. 1985), *cert. denied*, 474 U.S. 1109 (1986)).  "[T]o show that the Union's

---

the union's duty of fair representation, the Court does not reach the question of whether Plaintiff's employer breached the collective bargaining agreement.

tactical decisions in failing to present witnesses, or that its alleged perfunctory or otherwise inadequate representation of an employee during a grievance arbitration proceeding, are enough to support a breach of a union's duty of fair representation, the evidence must sufficiently indicate that the union's actions 'amounted to conduct and omissions so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary.'" *Tucker v. American Bldg. Maintenance*, 451 F. Supp. 2d 591, 596 (S.D.N.Y. 2006) (*quoting Barr*, 868 F.2d at 43) (internal quotation marks omitted).

   The facts asserted by Plaintiff do not plausibly meet the high bar required to establish a breach of the duty of fair representation.  Plaintiff first argues that the Court should find that the complaint adequately pleads a breach of the duty of fair representation because he was represented at his interview by a Local 812 representative other than his shop steward.  Plaintiff's Memorandum of Law in Opposition, Dkt. No. 56 ("Opposition") at 6.  However, the complaint asserts that the reason that his shop steward did not appear was "fraud" on the part of his employer—Mr. Ramirez's statement to the shop steward that no interview would take place that day, and Plaintiff's employer's statement during the interview that the steward had left for the day.  Accepting these allegations as true, the complaint does not suggest that Local 812 acted arbitrarily or in bad faith.  Rather, they allege that Local 812 was itself deceived; nonetheless, Local 812 provided Plaintiff representation at the interview.

   The second set of arguments asserted by Plaintiff, relating to tactical decisions made by Local 812 in connection with the arbitration hearing, are plainly insufficient to support his claim that the union breached its duty of fair representation.  In particular, Plaintiff takes issue with the union's failure to call certain witnesses at the hearing, and the union's failure to "allege or argue fraud against CCR for Ramirez's intentional misrepresentation" to the shop steward.  Opposition at 6; Compl. ¶ 37.  The principal question raised in the arbitration proceeding was whether Plaintiff "was

terminated for just cause." Compl. ¶ 32. In that context, a decision to focus the hearing on Plaintiff's confessed violations of company policy—and not the arguably collateral issue of what caused Plaintiff to be represented at an investigatory interview by one union representative and not another—does not plausibly fall "so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." *Barr*, 868 F.2d at 43 (quoting *N.L.R.B. v. Local 282, Int'l Brotherhood of Teamsters*, 740 F.2d 141, 147 (2d Cir. 1984)). Neither does a decision to call only one character witness rather than multiple. There are no allegations that Local 812's alleged tactical missteps were motivated by bad faith. While Plaintiff believes that a different strategy would have yielded better results, ultimately "[p]roof of mere negligence or errors of judgment . . . is insufficient. . . . As long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage." *Barr*, 868 F.2d at 43-44 (internal quotation marks and citations omitted); *see also Tomney v. Int'l Center for the Disabled*, 357 F. Supp. 2d 721 (S.D.N.Y. 2005) (finding tactical errors or lapses in arbitration proceeding inadequate to plead breach of duty of fair representation).

Finally, Plaintiff asserts that Local 812 breached its duty of fair representation by "failing to . . . conduct a rudimentary investigation to vindicate [Plaintiff], [and] ascertain the evidence allegedly evidencing his guilt . . . ." Compl. ¶ 37. Failure by a union to conduct an investigation can give rise to a breach of the duty of fair representation. However, "'although a union has a duty to perform some minimal investigation, only an egregious disregard for union members' rights constitutes a breach of the union's duty to investigate.'" *Thomas v. Little Flower for Rehab. & Nursing*, 793 F.Supp.2d 544, 548 (E.D.N.Y. 2011) (internal quotation marks and citation omitted). The Court is mindful that, when deciding a Rule 12(b)(6) motion to dismiss, the Court's task is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be

offered in support thereof." *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003) (internal quotation marks and citation omitted). Still, the Court finds that the complaint fails to plausibly allege a violation of the duty of fair representation as a result of the union's failure to investigate.

The facts pleaded in the complaint do not plausibly demonstrate an egregious disregard for Plaintiff's rights by Local 812 as a result of its failure to "ascertain the evidence allegedly evidencing his guilt." Compl. ¶ 37. It is important to remember that Plaintiff's termination was supported by Plaintiff's own confession of his guilt; no documentary or photographic evidence was introduced at the arbitration hearing regarding Plaintiff's termination. *Id.* ¶ 33. The complaint describes a series of occasions in which Local 812 representatives probed the circumstances of Plaintiff's false confession and his eventual termination, including: (1) the presence of Mr. Harrison, a union representative, at Plaintiff's interview; (2) Plaintiff's conversation with Mr. Harrison immediately following Plaintiff's interview, *id.* ¶ 22; (3) Plaintiff's conversation with his shop steward regarding the circumstances of his termination, *id.* ¶ 29; (4) a 45-minute interview with an attorney from Local 812 assigned to represent him, *id.* ¶ 31; and (5) the arbitration hearing itself, at which Plaintiff and his principal accuser testified, *id.* ¶ 33.

In light of these pleaded facts describing a series of fact-finding efforts by the union, the Court cannot conclude that the complaint plausibly alleges that Local 812 acted arbitrarily or in bad faith in conducting its investigation of Plaintiff's termination. Instead, the complaint's assertion that Local 812 failed to conduct a rudimentary investigation appears to be the kind of formulaic recitation of an element of the cause of action that the Supreme Court warned against in *Twombly* and *Iqbal*—unsupported, and in this case, arguably contradicted, by specifically pleaded facts. As a result, the Court concludes that the complaint fails to assert sufficient nonclusory factual matter "to nudge

[its] claims across the line from conceivable to plausible . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### C. "Class of One" Section 1985(3) Claim

A conspiracy claim under Section 1985(3) requires a plaintiff to allege: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Britt v. Garcia*, 457 F.3d 264, 269 n. 4 (2d Cir. 2006) (internal quotation marks omitted); *see also* 42 U.S.C. § 1985(3). The conspiracy must also be "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (internal quotation marks omitted); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Critically, the plaintiff has not alleged that the conspiracy was motivated by any kind of racial or other class-based discriminatory animus. Therefore, his claim under Section 1985(3) must fail.

In an attempt to rescue his claim, Plaintiff argues that he is relying on a "class of one" theory, because he was "' intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment.'" Opposition at 6 (quoting *Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 10 (2d Cir. 2013). But Plaintiff ignores the fact that "a claim under § 1985(3) for conspiracy to deny equal protection in violation of the Fourteenth Amendment is not actionable in the absence of state action." *Edmond v. Hartford Ins. Co.*, 27 F. App'x 51, 53 (2d Cir. 2001) (citing *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 831-32 (1983)); *see also* 15A C.J.S. *Conspiracy* § 80 (2015) ("When an alleged conspiracy is aimed at a right that is by definition a right only to be protected from state interference, such as First and 14th Amendment rights, the plaintiff must prove state involvement in the interference with that right. . . . A showing of state action is

required if a complaint alleging a conspiracy to deny equal rights rests on the 14th Amendment.") The complaint asserts no plausible basis for concluding that any of the named defendants are state actors or that they acted in conspiracy with a state actor. Therefore, Plaintiff's Section 1985(3) claim is dismissed.

### D. Abandoned Claims

In his opposition, Plaintiff expressly abandoned the third, fourth, and fifth claims asserted in the complaint. Opposition at 6 n. 2. Plaintiff also failed to oppose CCR's motion to dismiss Plaintiff's second cause of action. Because Plaintiff did not address Defendant's motion to dismiss with respect to that claim, it is deemed abandoned. *See Artis v. Velardo*, 7:14-cv-0833 (NSR), 2016 WL 154122, at *2 (S.D.N.Y. January 12, 2016) (collecting cases); *Harte v. Ocwen Fin. Corp.*, No. 13-cv-5410 (MKB), 2014 WL 4677120, at *8 (E.D.N.Y. Sept. 19, 2014) (collecting cases); *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) ("Generally, but perhaps not always, a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others.) As a result, the second, third, fourth, and fifth claims asserted by Plaintiff are dismissed.

### V. CONCLUSION

For the reasons outlined above, defendants' motions to dismiss are GRANTED. Plaintiff is granted leave to replead his first and sixth causes of action. Any amended complaint must be filed no later than twenty-one days from the date of this order. The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 48 and 50.

SO ORDERED.

Dated: February 16, 2016
New York, New York

GREGORY H. WOODS
United States District Judge